**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| JOSEPH O. OBADARE, | ) | CASE NO. 5:24-cv-02007-DAR |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| RASHAD J. GRANT, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant.[1] | ) | |
| | ) | |

## I.      Introduction

Before the Court is Plaintiff Joseph O. Obadare's ("Obadare") Renewed Motion for Imposition of Sanctions against Defendant Rashad J. Grant ("Grant"). (ECF Doc. 45). This matter was referred to me for general pretrial supervision on March 6, 2025. (ECF Doc. 22). That referral authorized me, amongst other things, to "enter and enforce pretrial orders, including but not limited to, orders pertaining to discovery matters . . . ." (*Id.*). Upon review of the motion, and consideration of Grant's consistent disregard for his discovery obligations and Court orders, I find that sanctions are warranted and recommend that the District Court grant the motion and enter default against Grant and award Obadare his attorneys' fees and costs associated with the his Motions to Compel.

---

[1] On May 29, 2026, two of the originally named defendants were dismissed from the case subsequent to settlement with Obadare. (*See* ECF Doc. 42; 43). Accordingly, Grant is the only remaining defendant in the case.

1

**II.        Procedural History**

At the time of this Report and Recommendation, the breakdown of the discovery process has been persistent and pervasive. I give a full recitation of the efforts made by Obadare and the Court to date that give context for the pending motions.

On June 11, 2025, Obadare notified the Court of an informal discovery dispute, claiming that Grant had failed to produce requested documents or answer interrogatories since April 10, 2025. The Court held a status conference on June 18, 2025 to discuss the discovery dispute. (Non-document entry of June 18, 2025). At that time, Grant notified the Court and Obadare that he intended to supplement his discovery responses based on clarification provided during the status call. (*Id.*). At a follow up status call on June 25, 2025, Obadare notified the Court that Grant still had not satisfied the requests and Grant indicated that he was unsure what was required of him. (Non-document entry of June 25, 2025). In an attempt to aid in the exchange of discovery, Obadare's counsel agreed to provide Grant with an itemized list of all outstanding discovery. (*Id.*). At that point, the Court informed Grant that he had an obligation to engage with the discovery process and was encouraged to turn over any documents responsive to Obadare's requests. (*Id.*).

The Court held another status call related to the discovery dispute on July 2, 2025. (Non-document entry of July 2, 2025). Obadare again informed that Court that there were deficiencies in Grant's discovery responses. (*Id.*). In advance of the call, Grant had only provided two tax returns and answered interrogatories. (*Id.*). Further, immediately preceding the call, Obadare received additional documents that he had not had the chance to fully review, but based on what he saw the production was still deficient. (*Id.*). The Court permitted Obadare to file a motion to

2

compel at that time but encouraged the parties to continue efforts to rectify the discovery issues. (*Id.*).

Obadare filed a motion to compel on July 17, 2025 (ECF Doc. 30). In it, he detailed the "extraordinary leeway" that he provided Grant in his attempt to solicit discovery responses and sought an entry from the Court compelling interrogatory answers, document production, and reasonable expenses and attorney's fees incurred for bringing the motion. (*Id.* at pp. 1, 20).

The Court held another status call on July 21, 2025, to discuss the discovery dispute. (Non-document entry of July 21, 2025). At the call, Grant informed the Court that he intended to file a response to Obadare's motion to compel. (*Id.*). Grant never filed a response.

Another status call was held on August 11, 2025 to discuss the discovery dispute. (Non-document entry of Aug. 11, 2025). At that call, Obadare informed the Court about a new discovery dispute that had arisen between him and Grant. (*Id.*). The Court allowed Obadare to file a second motion to compel, and notified the parties that it would hold a Zoom hearing on the motions. (*Id.*).

Obadare filed the second motion to compel on August 27, 2025. (ECF Doc. 31). That motion alleged Grant had failed to produce responsive documents to Obadare's second request for production. (*Id.* at p. 1). Obadare sought an order compelling production, awarding attorney's fees and expenses, and imposing sanctions to deter noncompliance. (*Id.* at p. 8).

The Court held a Zoom hearing on motions to compel on August 28, 2025. (*See* non-document entry of Aug. 28, 2025; ECF Doc. 32). In advance of the hearing, Obadare provided to the Court and the parties, via email, a document entitled "Discovery Deficiencies: Defendant Rashad J. Grant" at the Court's request. That document listed the outstanding discovery requests as follows:

1. Bank statements and other banking records for Alkebulan Development Group S.A. for 2020 through 2023

2. Books and accounting records of Alkebulan Development Group S.A. for 2020 through 2023

3. Books and accounting records of Made in Africa Project for 2020 through 2023

4. Source documents/invoices for expenditures of Obadare funds: "Ndao Payments" category

5. Source documents/invoices for expenditures of Obadare funds: "Mbacke Seye Payments" category

6. Source documents/invoices for expenditures of Obadare funds: "Mansour Gningue Payments" category

7. Analysis/documents supporting "ROI" representations, including that investors would earn "[a]pproximately $40k-$50k annual ROI by the 5th year of operation"

8. Documents relating to purported "waitlist" for hotel on "Transitional Repat Property"

9. Documents relating to other purported investors in the "Transitional Repat Property"

10. Analysis/documents supporting the "Feasibility Plan 2021" for the "Transitional Repat Property"

11. Documents created on or after 1/1/20 relating to Def. RJG's acquisition (or attempted acquisition) of title to African property, whether for himself or someone else and whether individually or on behalf of an entity

12. Applications received before 7/1/21 from persons applying to participate in projects RJG or controlled entities marketed

13. All other documents relating to "Transitional Repat Property," exclusive of other productions

14. Identification of bank accounts and other cash-equivalent accounts according to specific instructions

15. Identification of controlled entities, based on specific instructions

16. Identification of defined "key persons" according to instructions

4

17.    Identification of each "Alkebulan Land Purchaser"

18.    Identification of the land that Def. RJG or controlled entities purported to sell: legal and geographic descriptions

19.    Disclosure of requested information regarding defined "Related Party Transfers"

20.    Disclosure of requested information regarding defined "Ndao Affiliated Group Payments"

21.    Information reporting received (e.g., Forms 1099, W-2, Sch. K-1, etc.) and information returns filed in calendar year 2024

22.    Tax return(s) filed in calendar year 2023 (e.g., for year tax year 2022)

23.    Information reporting received (e.g., Forms 1099, W-2, Sch. K-1, etc.) and information returns filed in calendar year 2023

24.    Tax return(s) filed in calendar year 2022

25.    Information reporting received (e.g., Forms 1099, W-2, Sch. K-1, etc.) and information returns filed in calendar year 2022

26.    Tax return(s) filed in calendar year 2021

27.    Information reporting received (e.g., Forms 1099, W-2, Sch. K-1, etc.) and information returns filed in calendar year 2021

28.    Tax return(s) filed in calendar year 2020

29.    Information reporting received (e.g., Forms 1099, W-2, Sch. K-1, etc.) and information returns filed in calendar year 2020

30.    Statement regarding specific consideration received in exchange for approximately $60,000 of payments made to "Mr Ndao," as identified by def. RJG in exhibit to discovery request

31.    Statement of specific inputs, methods, valuation assumptions, other factors used to establish Def. RJG's representation relating to return on investment for "Transitional Repat Property"

32.    Statement of the gross revenue (GAAP, tax basis, or cash method) of Alkebulan Development Group S.A. for 2020, 2021, and 2022

At the conclusion of the hearing, the Court withheld a ruling on the motions to compel but ordered Grant to provide responsive documents or answers to interrogatories by September 12, 2025, to Requests 1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 13, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 32. (ECF Doc. 32, p. 3). Obadare was ordered to provide Grant specific details and descriptions regarding requests 10, 14, 15, and 16 by August 29, 2025, and Grant was again given until September 12, 2025 to provide answers. (*Id.*). Obadare indicated that requests 7 and 31 had been satisfied based upon Grant's statements at the hearing. (*Id.*).

The Court held another status call on September 19, 2025. (Non-document entry of Sept. 19, 2025). Obadare informed the Court that two unlabeled documents had been produced just 45 minutes before the call, and he did not know to which request they purportedly responded. (*Id.*). Grant was instructed to label the documents. (*Id.*).

Another status call was convened on October 1, 2025, however Grant failed to attend the call. (Non-document entry of Oct. 1, 2025). Nonetheless, Obadare informed the Court that Grant had produced some documents, however Obadare felt as though production was still deficient. (*Id.*). The Court permitted Obadare to supplement his motions to compel documenting the state of production. (*Id.*).

Obadare filed a supplemental brief on his motions to compel on October 10, 2025. (ECF Doc. 34). In it he detailed the explicit requests, timeline of requests and communication with Grant, and outstanding deficiencies. (*Id.*). Grant did not respond.

On December 4, 2025, I granted Obadare's motions, finding he had established that the requested discovery was relevant to the matter at hand, while Grant had not established that any of the requests were overbroad or unduly burdensome. (ECF Doc. 35, p. 7). I ordered Grant to respond to outstanding discovery requests described in categories 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 13,

6

14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 32 of Obadare's list entitled Discovery Deficiencies: Defendant Rashad J. Grant in the manner prescribed by the requests by December 19, 2025. (*Id.* at p. 8).

The Court held a telephone status conference on January 12, 2026, where Obadare notified the Court that Grant had not complied with the Court's Order, Grant did not dispute the assertion. (Non-document entry of Jan 12, 2026).

Obadare filed a motion for sanctions on January 16, 2026. (ECF Doc. 36). On March 19, 2026, I granted Obadare's Motion for Sanctions in part, adopting Obadare's Table of Inferences (ECF Doc. 36-1) regarding categories 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 32, and regarding those categories, allowing permissive inferences and precluding Grant from raising legal or factual defenses at trial. (ECF Doc. 37). Grant was also ordered to pay Obadare's expenses and attorney's fees for the preparation of both of his motions to compel (ECF Docs. 30, 31), his brief in support of his motion to compel (ECF Doc. 34), and his motion for sanctions (ECF Doc. 36).

On April 1, 2026, the Court held another telephone status conference regarding another discovery dispute between Obadare and Grant. (Non-document order of Apr. 1, 2026). After hearing about the dispute at the status conference, the Court permitted Obadare to file a third motion to compel. (*Id.*). Obadare filed a third motion to compel and for sanctions on April 9, 2026. (ECF Doc. 38). Grant did not respond to this motion. On July 7, 2026, I granted Obadare's motion in part, to the extent that it requested an order compelling Grant to provide responses to his January 16, 2026 discovery requests. (ECF Doc. 44, p. 10). Grant was ordered to provide those responses by July 17, 2026. (*Id.*). To the extent Obadare's motion sought an order sanctioning Grant and entering default judgment, I found said request premature at that time:

because "[b]y its terms, Rule 37(b) requires a party seeking a sanction of default against a party to secure a court order compelling disclosure or discovery." *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013) (citing *DeJesus v. Adkins*, 46 Fed.Appx. 244, 247 (6th Cir. 2002)). Therefore, before this Court can consider imposing sanctions, let alone default judgment for Grant's failure to engage with Obadare's January 2026 discovery requests, Grant must first disobey a Court order.

(*Id.* at p. 10). I then took the opportunity to caution Grant that if he, yet again, failed to engage with the discovery process and disregard a Court order that I would strongly consider recommending the Court enter default judgment should a motion for sanctions be filed:

[W]hile the request is denied at this time, I take this opportunity to state that this sanction will be strongly considered if Grant yet again disregards not only his obligations under the Rules but another order of this Court compelling his production of discovery. As has been detailed above, both Obadare and this Court have gone to great lengths in an attempt to have Grant meaningfully engage in the discovery process. All of those efforts have been squandered by Grant to this point through delay tactics, incomplete and irresponsive productions, disregard for Court orders, and as of the last status call, a direct statement by Grant that he does not intend to engage with discovery any further. While I am ordering Grant to provide responsive discovery responses through this Order, I am also explicitly warning him that failure to do so may lead to an order of default judgement against him.

(*Id.*).

On July 30, 2026, Obadare filed a Renewed Motion for Sanctions against Grant, incorporating all statements and arguments from his previous motion (ECF Doc. 38), and that Grant "has failed to provide any discovery response or even acknowledge the Court-Ordered Response Date. Indeed, he has failed to communicate with Plaintiff's counsel, in any manner whatsoever, since the July 7th Order." (ECF Doc. 45, p. 4). As a result, Obadare now "renews the request for the imposition of specific sanctions against Defendant, including the rendering of a default judgment, under Fed. R. Civ. P. 37, on all claims against him." (*Id.*). Grant has not responded to this motion.

8

**III.**      **Discussion**

Parties and their attorneys are obligated to comply with the discovery rules set forth in the Federal Rules of Civil Procedure; where they do not, a court may impose sanctions either by operation of the Rules or by inherent authority. *See, e.g.*, *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 500-03 (N.D. Ohio 2013) (collecting cases and describing consideration of sanctions under various Rules and inherent authority). A federal court may exercise its inherent power to sanction where it determines that a party or its attorney has acted in bad faith or for oppressive reasons, has practiced a fraud on the court, or has delayed, disrupted the litigation, or hampered the enforcement of a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (collecting cases). This is so because courts must "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43, quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962).

When a party has failed to obey a court order to produce or permit discovery, the district court may impose sanctions under Rule 37(b)(2), including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). In selecting a sanction, the court "may properly consider both punishment and deterrence." *Laukus*, 292 F.R.D. at 500 (citation omitted); *see also Peltz v. Moretti*, 292 F. App'x 475, 478 (6th Cir. 2008) (noting dismissal has been upheld as a sanction because it punishes the offending party and deters similar litigants from future misconduct).

9

When a party has failed to comply with a discovery order, the rule also provides that the court "*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, *unless* the failure was substantially justified or other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

The Sixth Circuit has outlined four considerations for district courts when determining which sanctions to impose under Rule 37:

> (1) Did the party act in bad faith? (2) Was the opposing party prejudiced? (3) Did the court give adequate warning? and (4) Could less drastic sanctions have ensured compliance?

*Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 769 (6th Cir. 2019) (internal citation omitted); *see Peltz*, 292 F. App'x at 479 (outlining the court's "four factor test when reviewing a decision by a district court to impose sanctions under Rule 37"). Under this four-factor test, the sanctioned party bears "[t]he burden to prove that the failure to comply with discovery obligations was the result of inability and not due to willfulness, bad faith or fault." *Laukus*, 292 F.R.D. at 500 (citation omitted).

In his latest motion, referred to as a renewed motion, Obadare requests that the Court impose sanctions pursuant to Rule 37 including imposing default judgment asserting that it is "founded on the same grounds and reasoning as the Precursor Motion." (ECF Doc. 44, p. 4). As such, I take that statement to be an incorporation of all assertions and arguments made in the previous motion. In so incorporating, Obadare argues that the discovery has been "plagued by Defendant Grant's repeated bad faith, avoidance efforts, alterations and metadata wiping, and general disregard for his most basic duties. He has shunned this Court's lenience, and he has ignored extended periods afforded to him for discovery compliance." (ECF Doc. 38, p. 1).

10

According to Obadare, through the latest discovery requests, "given the prior deficiencies, [he] had hoped to salvage at least some baseline for Defendant Grant's business and investment activities material to the First Amended Complaint." (*Id.* at p. 3). These requests sought information related to potential investors and occupants of the "Transitional Repat Property," source documentation for income and expenses of Alkebulan Development Group S.A., and purported government partnerships made by the Made in Africa Project. (*Id.*). Obadare argues this information is "central" to his claims and without it he "cannot definitively establish the underlying goods and services that were actually exchanged in relevant transactions, including those for which RICO predicate activity was alleged." (*Id.*).

Obadare explains that he sent the latest discovery requests on January 16, 2026, which went ignored, and he then tried to confer with Grant regarding the new requests before informing the Court. (*Id.* at p. 2).

Ultimately, after citing Grant's "previous and continued bad faith" preventing "any realistic possibility for key evidence to materialize [and blocking] the most essential items from ever making it to a finder of fact[,]" Obadare requests sanctions, including: "Under Fed. R. Civ. P. 37(d), Plaintiff requests that a default judgment be issued against Defendant Grant with respect to all claims against him in the above-captioned action" or in the alternative "a mandatory (or at least permissive) adverse inference that the information or documents not produced reflect information prejudicial to Defendant Grant" and "the preclusion of Defendant Grant's assertion of any legal or factual defense to the extent such defense could be challenged by information or documents within the scope of the request." (ECF Doc. 38, pp. 5, 6).

I agree with Obadare. I find that the imposition of default judgment as a sanction is appropriate and necessary given Grant's continued disregard for his discovery obligations

11

throughout the pendency of discovery, culminating in his non-compliance with this Court's December 4, 2025, March 19, 2026, and now the July 7, 2026 Orders. (*See* ECF Docs. 35; 37; 44).

### 1. Grant Acted in Bad Faith.

Looking to the first question, I find that Grant has acted in bad faith. As previously acknowledged in the first imposition of sanctions, despite the Court's "clear directive" that Grant provide "full responses in the manner prescribed by the requests, by December 19, 2025 . . . . Grant produced nothing. He did not partially comply. He did not seek relief from the Order. He did not request an extension. He provided no explanation for ignoring the Court's deadline." (ECF Doc. 37 citing ECF Doc. 36, pp. 4-5). Grant has continued that non-compliance into the Court's latest July 7, 2026 order. (*See* ECF Doc. 44).

Grant has been given multiple opportunities, above and beyond what is required, to comply with Obadare's most basic discovery requests throughout the pendency of this action. He chose to disregard his obligations, in an apparent attempt to stall the proceedings. When asked why he had not provided discovery responses, Grant made baseless claims – for example, that his own tax records were not within his control or that he could not afford to obtain them. Most recently, at the April 1, 2026 status conference Grant stated that he did not intend to participate in any further discovery. None of Grant's conduct or statements are indicative of a party acting in good faith.

### 2. Obadare has been Prejudiced.

Turning to the second question, it is abundantly clear that Obadare has been prejudiced. Since at least June 18, 2025, Obadare has been engaging with Grant to attempt to get foundational discovery, and since that time Obadare has received essentially nothing of value. As

12

a result of Grant's conduct, Obadare has expended both time and money which has in turn extended the case. According to the original Case Management Order entered on May 15, 2025, fact discovery was to conclude by December 1, 2025. (ECF Doc. 27). Yet, now in August of 2026 this Court is still working through continuous fact discovery issues.

### 3.      Grant had Adequate Warning Before the Imposition of Sanctions.

Regarding the third question, I find that the Court gave Grant adequate warning before imposing sanctions. The docket reveals that before formally compelling Grant to provide the requested discovery, I ordered him to engage with Obadare on multiple occasions. I held a telephone status conference on June 18, 2025 where Obadare informed the Court about the first discovery dispute. (Non-document entry of Jun. 18, 2025). At that time, Grant advised that he would supplement his responses. (*Id.*). I informed Grant that if he did not do so, the Court would consider allowing a motion to compel. (*Id.*). Then at a June 25, 2025 status call, Grant claimed he had not complied with his discovery obligations because he was not aware what was required of him. (Non-document entry of Jun. 25, 2025). After Obadare agreed to provide an itemized list of the outstanding discovery, the Court set another call and again instructed Grant that it would consider a motion to compel if Grant did not comply. (*Id.*).

On July 2, 2025, Grant had yet again failed to fully or meaningfully comply with discovery. (Non-document entry of July 2, 2025). He had provided some limited documents but otherwise failed to produce others or properly respond to interrogatories. (*Id.*). As a result, the Court allowed Obadare to file the motion to compel, instructed the parties to continue working towards discovery, and set another status call. (*Id.*).

When the Court was informed of yet another discovery dispute on August 11, 2025, it instructed Obadare to supply a comprehensive list of Grant's discovery deficiencies in an attempt

13

to ensure Grant was aware of *exactly* what was requested of him. (Non-document entry of Aug. 11, 2025). Obadare provided Grant and the Court with a document entitled "Discovery Deficiencies: Defendant Rashad J. Grant." That document listed the 32 deficient discovery requests detailed above.

The Court then held a hearing on August 28, 2025. (*See* non-document entry of Aug. 28, 2025). During the hearing, the Court inquired about the status of the production of each outstanding item on the list provided by Obadare. Grant acknowledged that he had not provided responses but claimed that he was unable to acquire some documents – for example his own tax returns – due to monetary constraints. The Court withheld a ruling on the Motions to Compel but ordered Grant to provide responsive documents or answers to interrogatories by September 12, 2025, to Requests 1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 13, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 32. With respect to requests 10, 14, 15, and 16, the Court ordered Plaintiff's counsel to provide specific details and descriptions regarding what was being requested to Grant no later than August 29, 2025. Grant was given until September 12, 2025, to provide appropriate responses to Plaintiff's counsel.

The Court held a telephone status conference on September 19, 2025. Approximately 45 minutes before the call, Grant produced unlabeled and uncategorized documents. At the call, the Court ordered Grant to label the documents for Obadare to determine what requests they were responsive to. (*See generally* non-document entry of Sept. 19, 2025).

The Court held another telephone status conference on October 1, 2025, however, Grant failed to attend. (Non-document order of Oct. 1, 2025). When I granted Obadare's Motions to Compel on December 4, 2025, I explicitly informed Grant as follows: "If Grant fails to comply

14

with this Order, the Court will consider harsher sanctions including monetary sanctions, adverse inferences, or a preclusion of legal or factual defenses." (ECF Doc. 35, p. 7).

Those sanctions were imposed on March 19, 2026 when Grant yet again failed to comply with his discovery obligations and Court orders. (*See* ECF Doc. 37). At that time, I imposed Obadare's Table of Inferences (ECF Doc. 36-1) regarding categories 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 32 is imposed to allow for permissive inferences and to preclude Grant from raising legal or factual defenses related to those categories. (*Id.* at p. 11).

Subsequently, Obadare requested new discovery, and in doing so "had hoped to salvage at least some baseline for Defendant Grant's business and investment activities material to the First Amended Complaint." (ECF Doc. 38, p. 3). These requests sought information seemingly outside the scope of the already imposed inference sanctions. Yet, Grant still refused to engage in the process requiring Obadare to seek an order compelling those responses, and now yet another order seeking sanctions for disobeying the court order.

Further, to the issue of adequate notice, I note that in the Court's latest order compelling Grant to provide Obadare the requested discovery, I explicitly warned that failure to do so could result in an award of default judgment. (*See* ECF Doc. 44, p. 10).

It is without question that Grant has been provided considerable grace in an effort to get him to engage in the mandatory discovery process, a courtesy that he has repeatedly squandered. The Court held eight conferences, spanning across six months, related to Grant's failure to engage with Plaintiff's standard discovery requests. During this time the Court, and Obadare, provided extraordinary guidance through discussion and the preparation of documents to encourage participation rather than sanctions. Throughout this time, Grant was informed of what

was required of him, and cautioned about the possibility of escalating consequences he faced should he not engage, including the latest explicit warning about the possibility of default judgment. There can be no doubt that this Court gave Grant adequate warning before imposing this sanction.

### 4.      Less Drastic Sanctions Could Not Ensure Compliance.

Looking to the final question, I find that less drastic sanctions would not ensure Grant's compliance because this Court has already imposed them and Grant has continued to disregard his obligations. As previously mentioned, I imposed 29 permissive inferences and the preclusion of defenses related to those inferences. (ECF Doc. 37). Now, Obadare comes to this Court again seeking sanctions. (ECF Doc. 45). I find that at this point, the imposition of the alternative sanction would only serve to frustrate the trial and would effectively serve as a default judgement as Grant would essentially be precluded from raising any defense at all due to his lack of candor and engagement with the discovery process. Grant has made clear through his conduct and his words that he does not intend to engage with the process as is required of him. Therefore, I find that there are no lesser sanctions that could ensure compliance.

### IV.     Monetary Sanctions

Regarding monetary sanctions, as previously stated, Rule 37 (b)(2)(C) requires the Court to "order the disobedient party . . . to pay reasonable expenses, including attorney's fees caused by the failure [to comply with a Court Order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Here, Grant has not responded to Obadare's Motion for Sanctions, and his time to do so has passed. Accordingly, I find nothing in the record to establish that Grant's failures were substantially justified nor that an award would

16

be unjust. I therefore recommend that the District Court order Grant to pay Obadare's expenses and attorney's fees for the preparation of both of his Motions to Compel (ECF Docs. 38; 45).

## V.     Recommendation

For the foregoing reasons, I recommend that Obadare's Renewed Motion for Sanctions (ECF Doc. 45) be granted and that the Court enter default judgment against Grant. I further recommend that Grant be ordered to pay Obadare's expenses and attorney's fees for the preparation of both of his Motions to Compel. (ECF Docs. 38; 45).

Dated: August 13, 2026

REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

17